# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Mountain Chief Management Services, Inc. )     ASBCA No. 58725
)
Under Contract No. N00178-08-D-5506 )

APPEARANCE FOR THE APPELLANT:     Mr. Daniel W. Chattin
                                   Chief Operating Officer

APPEARANCES FOR THE GOVERNMENT:   Ronald J. Borro, Esq.
                                   Navy Chief Trial Attorney
                                   Stephen L. Bacon, Esq.
                                   Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE JAMES

This appeal arises from the contracting officer's (CO's) decision denying Mountain Chief Management Services, Inc.'s (MCMS's) 3 May 2012 claim for $35,807.32 in travel costs and labor hours allegedly furnished over the maximum 2,000 hours specified for each of four employees under the captioned contract, which MCMS timely appealed to this Board. The Board has jurisdiction of the appeal under the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101-7109. The parties elected to submit their cases upon the record under Board Rule 11. The parties have submitted Rule 4 and supplemental Rule 4 documents and briefs. The Board is to decide entitlement only (Bd. corr.).

## FINDINGS OF FACT

1. On 29 May 2008 MCMS and the Naval Surface Warfare Center, Southeast, Dahlgren, Virginia, entered into multiple award, indefinite delivery, indefinite quantity contract, No. N00178-08-D-5506 (the contract). The contract specified professional services from multiple contractors for Navy and Marine Corps activities by issuance of task orders that were subject to the contract's terms and conditions. (R4, tab 1(a) at 1, 6, 15, 45)

2. The contract incorporated by reference the FAR 52.243-1, CHANGES—FIXED-PRICE (AUG 1987), ALTERNATE I (APR 1984), clause, which provided in pertinent part:

(a) The [CO] may at any time, by written order, and without notice to the sureties, if any, make changes within

the general scope of this contract in any one or more of the following:

(1) Description of services to be performed.

(2) Time of performance (i.e., hours of the day, days of the week, etc.).

(3) Place of performance of the services.

(b) If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract, whether or not changed by the order, the [CO] shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.

....

(e) Failure to agree to any adjustment shall be a dispute under the Disputes clause. However, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed.

(R4, tab 1(a) at 43)[1]

3. The contract included the SEA 5252.216-9122, LEVEL OF EFFORT (DEC 2000) clause, which provided in pertinent part:

(a) The Contractor agrees to provide the total level of effort specified in the next sentence in performance of the work described in Sections B and C of this contract. The total level of effort for the performance of this contract shall be (to be completed for each order) total man-hours of direct labor....

---

[1] The government asserts: "Because the Contract is 'for architect-engineer or other professional services,' FAR 52.243-1, Changes—Fixed-Price, Alternate III (Apr 1984) is actually the applicable provision," which modified ¶ (a) and added ¶ (f) to the Alternate I clause (gov't br. at 4 n.1). The record includes no contract modification to substitute the Alternate III clause (R4, tabs 1, 4-5). However, there is no essential difference in their ¶ (a) provisions and the duties of the contractor in ¶ (f) of Alternate III and are akin to the duties in ¶ (e) of the SEA 5252.216-9122, Level of Effort (Dec 2000) clause (*see* finding 3).

2

....

(d) The level of effort for this contract shall be expended at an average rate of approximately (to be identified at the task order level) hours per week. It is understood and agreed that the rate of man-hours per month may fluctuate in pursuit of the technical objective, provided such fluctuation does not result in the use of the total man-hours of effort prior to the expiration of the term hereof, except as provided in the following paragraph.

(e) If, during the term hereof, the Contractor finds it necessary to accelerate the expenditure of direct labor to such an extent that the total man-hours of effort specified above would be used prior to the expiration of the term, the Contractor shall notify the Task Order Contracting Officer [TOCO] in writing setting forth the acceleration required, the probable benefits which would result, and an offer to undertake the acceleration at no increase in the estimated cost or fee together with an offer, setting forth a proposed level of effort, cost breakdown, and proposed fee, for continuation of the work until expiration of the term hereof. The offer shall provide that the work proposed will be subject to the terms and conditions of this contract and any additions or changes required by then current law, regulations, or directives, and that the offer, with a written notice of acceptance by the [TOCO], shall constitute a binding contract. The Contractor shall not accelerate any effort until receipt of such written approval by the [TOCO]. Any agreement to accelerate will be formalized by contract modification.

(R4, tab 1(a) at 18-19)

4. On 7 September 2010 Ms. Dawn Brown, CO for the Naval Facilities Engineering Command, Southeast, issued Task Order JM01 (TO1) to MCMS under the contract to provide engineering technician (ET) and construction management (CM) services from 27 September 2010 to 26 September 2011 in support of Humanitarian Assistance Program projects in Haiti (R4, tab 4 at 1-2, at 2, 6, 12 of 21).

5. TO1's contract line item numbers (CLINs) 5000, 5002, 5004 and 5006 required MCMS to provide two ETs and two CMs for project support; each was to

3

furnish 2,000 hours at $70.48/hr., totaling 8,000 hrs., for a price of $563,840.00 (R4, tab 4 at 1 of 21). CLINs 5001, 5003, 5005 and 5007 are not material to this dispute.

6. TO1 stated: "Contractor employees performing services under this order will be controlled, directed and supervised at all times by management personnel of the contractor" (R4, tab 4 at 8, 13 of 21). Notwithstanding the SEA 5252.216-9122, Level of Effort provision ¶ (d), TO1 did not identify an average rate of weekly hours to be expended (R4, tabs 4, 5).

7. Of the 8,000 hours TO1 specified for CLINs 5000, 5002, 5004 and 5006 (the ET/CM CLINs), as of 26 July 2011 both parties knew or should have known that MCMS's invoice Nos. 1-10 had billed for 6,672.74 hours (R4, tab 17, subtabs 1-10), leaving 1,327.26 (8,000-6,672.74) remaining hours for those CLINs.

8. On 25 July 2011 MCMS submitted invoice No. 11 for 656 hours under the ET/CM CLINs (R4, tab 22). Navy Program Analyst Rhonda Grimes's 26 July 2011 email to MCMS (copied to CO Brown) stated:

> I have rejected July's invoice [No. 11 of 25 July 2011] and there are a few items that I need to cover.
>
> First – CLIN 5006 (CM #2) on current invoice 011 is billing 176 hours...; however, your WAWF [DoD Wide Area Workflow] invoice reflects differently, billing for 160 hours.... Please provide a corrected invoice.
>
> ....
>
> Third - This contract [TO1] is for 2000 hours per position. We are not invoiced/billed for your employee's leave or paid holidays, since this is supposed to be...covered as part of your burdened rate.
>
> As of 01 August, there will be 41 workdays remaining on this contract, or approximately 328 hours per position; however, as currently billed/invoiced, only approximately 172 hours remain[2] per position. Services are expected to continue until 26 September.

(R4, tab 20)

---

[2] The record does not show how those "172 hours" were calculated.

4

9. MCMS's 26 July 2011 response to Ms. Grimes's email was copied to CO Brown and stated:

> We have already submitted for employees who have rotated out to go back to Florida because they were approved to work from home from the ROICC.... We have already paid the ETs.... Please advise as to how you would like to proceed with the remaining hours.

(R4, tab 23 at 1)

10. On 4 August 2011 the government paid MCMS's 1 August 2011 corrected invoice No. 11 for 624 hours on the ET/CM CLINs (changing CLIN 5006 hours from 176 to 144). On 12 September 2011 the government paid MCMS's invoice No. 12 for 656 hours on the ET/CM CLINs. (R4, tab 17, subtabs 11, 12) The parties knew or should have known that 47.26 hours remained on the ET/CM CLINs (8,000-(6,672.74 + 624 + 656)).

11. CO Brown's 12 September 2011 email to MCMS stated:

> [W]e have another issue with the Labor Invoices [for the ET/CM CLINs].... As the award was for 2000 hours per person, we see that we have been billed for more than 2000 hours already on 3 personnel and nearly 2000 for the fourth. Please explain – we have 17 more days beyond the last invoice period.

MCMS's email of the same date stated: "We have Invoiced for the hours worked by our contractors [3] as per the guidance passed down to us." (R4, tab 24 at 1-2)

12. On 26 September 2011 MCMS submitted invoice No. 13 for 536 hours under the ET/CM CLINs (app. supp. R4, tab A-4).

13. MCMS's 29 September 2011 email to CO Brown stated:

> Here is the [26 July 2011] response I sent Rhonda [Grimes] concerning Invoice 11 where this issue initially came up. Rhonda did not reply to this email and she accepted our Invoice [11], which was then Processed as

---

[3] The record does not show whether the ET/CMs were employees of MCMS or independent contractors.

5

well. If we were not going to get paid for the time we worked, then the contractors would have left at the end of the 2000 hrs. We were however, not given that guidance and proceeded to work until the 23rd or 26th of Sept.

We were given guidance to work even when transferring back and forth to Florida. We did not decide to do that on our own and our Invoices were Approved every time for that work.

Please let me know what [the] next steps are to get this Invoice 013 Processed.

(App. supp. R4, tab A-5 at 3-4)

14. On 29 September 2011 CO Brown rejected MCMS's invoice No. 13, stating: "MCMS can only bill for the remaining amount on the task order ($4,428.15).[4] No additional until further notice pending Request for Equitable Adjustment. It appears MCMS has billed for full hours and payment has been made with exception of the $4,428.15." (R4, tab 17, subtab 13 at 5) We find no evidence that CO Brown approved in writing MCMS's incurrence of any ET/CM hours exceeding the 8,000 hours specified by TO1.

15. MCMS's 30 September 2011 email to CO Brown stated, *inter alia*:

First, Mountain Chief has been working outside the original task order and has submitted the documentation showing the cost associated with change. Second, Mountain Chief was direct [sic] to work beyond the 2000 hours indicated in the original task order CLIN. We will provide the email threat directing our CM/ET's to work periodically from their homes in Fl. and to work in Haiti through September 23rd.

(App. supp. R4, tab A-6 at 1-2)

16. On 5 October 2011 MCMS resubmitted invoice No. 13 requesting 47.26 hours for one ET and one CM in September 2011, totaling $3,330.88, which the government approved on 19 October 2011 (R4, tab 17, subtab 13 at 1, 5-7). MCMS's

---

[4] The record does not show how CO Brown calculated $4,428.15. At $70.48/hr. (finding 5), $4,428.15 corresponds to 62.83 hours, inconsistent with the 47.26 hours then remaining (finding 10).

6

13 invoices under TO1 for the ET/CM CLINs totaled 8,000 hours, for which it was paid $563,841.12[5] (R4, tab 17).

17. On 3 May 2012 MCMS submitted a $35,807.32 claim dated 21 April 2012 alleging $1,359.80 for Mr. Chattin's travel costs, and $34,447.52 for 488.74 labor hours (536 hours invoiced - 47.26 hours paid on invoice No. 13) exceeding the 8,000 hours specified for the ET/CM CLINs (R4, tab 14).

18. The CO's 20 March 2013 final decision denied MCMS's claim in its entirety (R4, tab 16). On 14 June 2103 MCMS timely appealed to the Board, which appeal was docketed as ASBCA No. 58725.

19. On 15 July 2014 MCMS advised the government of the withdrawal of appellant's "$1,300" travel training cost claim (ex. G-1).

## PARTIES' CONTENTIONS

MCMS implicitly argues[6] that (1):

> The Government directed the hours worked for the four employee positions furnished by MCMS. The Government controlled their training, their mobilizations and demobilizations, authorization to work stateside, and where and when they worked in-country [Haiti]. MCMS had no control over how many hours its employees in these positions worked.

(App. br. at 1); that (2) Ms. Grimes's 26 July 2011 statement, "Services are expected to continue until 26 September" "with the knowledge and consent of the [CO] was not qualified by the presently funded 2,000 hours per position" and was "with knowledge that this would require the technicians to work more than 2,000 hours" each (*id.* at 1-2); and that (3) "The Navy…forced MCMS to submit a revised invoice for the hours remaining of the original 2,000 hours [per employee] even though MCMS was directed to work more hours" (*id.* at 7).

Respondent argues that MCMS has not established a written or constructive change order for lack of evidence that the government ordered, directed or compelled MCMS to furnish additional hours; and even if the record suggests the issuance of such order or direction, MCMS did not obtain the written approval to furnish such hours by an official with authority to bind the government (gov't br. at 6-12).

---

[5] The $1.12 overage was probably due to rounding of invoice amounts.

[6] Appellant's brief contains no "argument," so designated. The following arguments are taken from statements in appellant's brief that cited no record evidence.

7

## DECISION

MCMS has the burden of proof of a constructive change order claim by establishing that:

> (1) [I]t was compelled by the government to perform work that was not required by the terms of the contract; (2) the person directing the change had contractual authority unilaterally to alter the contractor's duties under the contract; (3) the contractor's performance requirements were enlarged; and (4) the additional work was not volunteered, but was directed by a government officer.

*Northrop Grumman Systems Corp. Space Systems Division*, ASBCA No. 54774, 10-2 BCA ¶ 34,517 at 170,242-43.

This appeal presents a single issue for decision: Did the government's 26 July 2011 statement to MCMS –

> This contract [TO1] is for 2000 hours per position....
>
> As of 01 August, there will be 41 workdays remaining on this contract, or approximately 328 hours per position; however, as currently billed/invoiced, only approximately 172 hours remain per position. Services are expected to continue until 26 September.

or any other government statement compel MCMS to perform the alleged 488.74 hours exceeding the 8,000 hours specified by TO1?

MCMS argues that the government directed the hours worked by MCMS's ET/CMs, MCMS had no control over how many hours such employees worked, and Ms. Grimes did not qualify her 26 July 2011 statement, "Services are expected to continue until 26 September" by the 2,000 hours per CLIN specified by TO1 and her statement was "with knowledge that this would require [each ET/CM] to work more than 2,000 hours." The fatal flaw with these arguments is that they are not substantiated by any record evidence (*see* n.6). Indeed, the record evidence refutes MCMS's arguments.

TO1 did not identify an average rate of weekly hours to be expended for ET/CM services (finding 6). Hence, throughout the performance period MCMS could incur and bill the 8,000 ET/CM hours at the rate it decided was appropriate. By

8

26 July 2011 both parties knew or had reason to know that MCMS had billed 6,672.74 hours of ET/CM services, leaving 1,327.26 hours remaining on TO1 (finding 7). On 26 July 2011 Ms. Grimes stated to MCMS: "Services are expected to continue until 26 September" (finding 8). She did not direct MCMS to expend a specific weekly or monthly rate for the remaining ET/CM hours during July-September 2011.

MCMS's 12 and 29 September 2011 emails to CO Brown stated, respectively, that MCMS had invoiced the ET/CM hours "per the guidance passed down to us" and "We were given guidance to work even when transferring back and forth to Florida" (findings 11, 13). MCMS did not identify who gave such guidance or when such guidance was given.

Ms. Grimes' 26 July 2011 email did not state or infer that ¶ (e) of the contract's SEA 5252.216-9122, Level of Effort (Dec 2000) clause, which required the written approval of the task order CO to accelerate TO1 effort (finding 3), was not applicable or should be disregarded. The record contains no evidence that CO Brown approved in writing MCMS's incurrence of any ET/CM hours exceeding the 8,000 hours specified by TO1 (finding 14).

We hold that MCMS has failed to prove that the government's July-September 2011 communications regarding invoice billings and payments compelled MCMS to expend more ET/CM CLIN hours than the 8,000 specified by TO1.

CONCLUSION

We deny the appeal.

Dated: 3 December 2014

DAVID W. JAMES, JR.
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58725, Appeal of Mountain Chief Management Services, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

10